FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Matthew Samet (SBN 311865)
3300 Hillview Avenue
Palo Alto, California  94304
Telephone:     (650) 849-6600
Facsimile:      (650) 849-6666
  matthew.samet@finnegan.com
B. Brett Heavner (*pro hac vice to be filed*)
  b.brett.heavner@finnegan.com
Jonathan Uffelman (*pro hac vice to be filed*)
  Jonathan.uffelman@finnegan.com
Yinfei Wu (*pro hac vice to be filed*)
  yinfei.wu@finnegan.com
901 New York Avenue NW
Washington, DC  20001
Telephone:     (202) 408-4000

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SHENZHEN BIG MOUTH TECHNOLOGIES CO., LTD. and DECAI (TONY) FU,<br><br>Plaintiffs,<br><br>v.<br><br>FACTORY DIRECT WHOLESALE, LLC,<br><br>Defendant. | CASE NO. 21-cv-9545<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF NON-VIOLATION OF THE ACPA, FOR REVERSE DOMAIN NAME HIJACKING, FOR NON-TRADEMARK INFRINGEMENT, AND CANCELLATION OF FEDERAL TRADEMARK REGISTRATION** |

Plaintiffs Shenzhen Big Mouth Technologies Co., Ltd. and Defu (Toney) Cai ("Plaintiffs") by their undersigned attorneys, allege as follows, upon actual knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters:

**NATURE OF THE ACTION**

1.      This case is brought pursuant to 15 U.S.C. §§ 1114(2)(D)(iv)-(v) and for declaratory relief pursuant to 28 U.S.C. 2201-2202 to establish that Plaintiffs' registration and use of the internet domain name <bestoffice.com> ("the Domain Name") is not unlawful under the Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d) ("ACPA") or otherwise under the Lanham Act (15 U.S.C. 1051 et. seq.), and to prevent the transfer of the Domain Name to Defendant, which was ordered in an administrative panel decision notified on November 30, 2021 under the Uniform Domain Name Dispute Policy ("UDRP") in a proceeding captioned *Factory Direct Wholesale, LLC v. Decai Fu*, Case No. FA2111001971788.

2.      This action is also brought pursuant to 15 U.S.C. §§ 1114(2)(D)(iv) for reverse domain name hijacking for a judgment that Defendant's actions violate ACPA, have harmed and will continue to harm Plaintiffs, thereby entitling Plaintiffs to recover actual and/or statutory damages.

3.      This action is brought pursuant to 15 U.S.C. § 1115(b)(4) for a declaratory judgment that Plaintiffs' descriptive fair use of the term "BestOffice" for office furniture related goods and services does not infringe upon any of Defendant's alleged trademark rights.

4.      This action is further brought under 15 U.S.C. §§ 1051 and 2201 for a declaratory judgment of non-infringement of Defendant's alleged trademark rights based on the ground that Defendant does not have a valid protectable trademark to the term "BestOffice" for furniture designed for use in an office setting.

5.      Finally, this action is brought under 15 U.S.C. §§1064 and 1119 for cancellation of Defendant's Registration No. 5690345 for lack of acquired distinctiveness.

**THE PARTIES**

6.      Plaintiff Shenzhen Big Mouth Technologies Co., Ltd is a limited company of China with a principal place of business at No. 818 Yangming West Road, Yuyao, Zhejiang, China.

7.      Plaintiff Decai (Tony) Fu is an individual of China with a mailing address at No. 818 Yangming West Road, Yuyao, Zhejiang, China.  Decai Fu is Plaintiff Decai (Tony) Fu's Chinese name spelled in English.

8.     On information and belief, Defendant Factory Direct Wholesale, LLC is a Georgia corporation with a principal place of business at 2855 N Berkeley Lake Rd., Duluth, Georgia 30096.

### JURISDICTION AND VENUE

9.     This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 1064, 1115 (b)(4), 1119, and 1121; 28 U.S.C. §§ 1331, 1332, 1338, and 1367; and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this case arises under 15 U.S.C. § 1114 in that Plaintiffs are the registrant of a domain name that has been suspended, disabled, or transferred under a policy provided by the registrar thereof relating to the alleged conflict with a trade or service mark claimed by the Defendant.

11.     This Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant has submitted itself to the personal jurisdiction in this Court when it filed the complaint pursuant to the Uniform Domain Name Dispute Resolution Policy.  Specifically, Defendant agreed to jurisdiction at "the location of the principal office of the concerned registrar, Google LLC in California."  Exhibit A, Complaint in Accordance with the Uniform Domain Name Dispute Resolution Policy, p. 11, ¶ 10.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(2) because the domain name registrar, Google LLC, is located at 1600 Amphitheatre Parkway, Mountain View, CA 94043, which is in this judicial district.  Exhibit B, Google LLC's Correspondence to Plaintiffs Concerning this Action.

### BACKGROUND FACTS

### Plaintiffs and Their Use of The Descriptive Term "BESTOFFICE"

13.     Established in 2012 in China, Plaintiffs are a family-owned and operated business from China founded by Plaintiff Defu (Tony) Cai, an individual of China.

3

14.     Since as early as December 2012, Plaintiffs have been dedicated to selling office lighting and furniture to the United States.  Plaintiffs have, from time to time since 2012, used the term "BESTOFFICE" in selling and distributing their lighting, furniture, and gaming products.

15.     The Domain Name was registered on May 19, 2002, which is more than ten years before Defendant allegedly first used the term BESTOFFICE.  Exhibit C, https://www.godaddy.com/whois/results.aspx?checkAvail=1&tmskey=tmskey%3D123&domain=bestoffice.com.

16.     On October 3, 2019, Plaintiffs acquired the Domain Name from the Domain Name's prior owner and has operated a website at the Domain Name for the purpose of expanding their business to online sales.

17.     Specifically, Plaintiffs advertise, promote, and sell home and office furniture and gaming products from the acquired website located at the Domain Name.  A screenshot of Plaintiffs' website is displayed below.



18.     In registering and using the Domain Name, Plaintiffs had no intent to divert customers from Defendant's online location.

19.     Plaintiffs did not acquire the Domain Name to target Defendant's alleged trademarks, but rather because it matched their long-standing, descriptive use of the term "BestOffice."

20.     The laudatory term "BEST" attributes quality or excellence to Plaintiffs' goods and services and therefore is merely descriptive of office furniture made with excellent quality.

21.     The word "BEST" is defined as "better than all others in quality or value[1]," "of the highest quality, or being the most suitable, pleasing, or effective type of thing or person[2]" " of the highest quality, excellence, or standing[3]," and "the superlative of good.[4]"

22.     The word "OFFICE" has been commonly used to describe the nature, purpose, and characteristics of equipment and furniture designed for use in an office setting.

23.     The word "OFFICE" is defined as "a place where a particular kind of business is transacted or a service is supplied[5]," "a room assigned to a specific person or a group of persons in a commercial or industrial organization[6]," "a room or part of a building in which people work[7]," and "a room or a part of a building where people work sitting at desks[8]."  Wikipedia has an entry under "OFFICE" that in the 20th century, it "evolved into the cubicle office furniture system.[9]"  Thus, the word "OFFICE" is generic for office furniture and office equipment related goods and services.

24.     When used together, the term "BEST OFFICE" or "BestOffice" has been commonly understood by consumers to describe the excellent quality of office furniture products and their sales services.

25.     The Merriam-Webster Dictionary has a "Usage[10]" entry for "BEST OFFICE DESKS FOR WORKING AND STUDYING."

---

[1] https://www.merriam-webster.com/dictionary/best

[2] https://dictionary.cambridge.org/us/dictionary/english/best

[3] https://www.dictionary.com/browse/best

[4] https://www.collinsdictionary.com/us/dictionary/english/best

[5] https://www.merriam-webster.com/dictionary/office

[6] https://www.dictionary.com/browse/office

[7] https://dictionary.cambridge.org/us/dictionary/english/office

[8] https://dictionary.cambridge.org/us/dictionary/english/office

[9] https://en.wikipedia.org/wiki/Office

[10] https://www.merriam-webster.com/theusage/best-office-desk

26. Plaintiffs' use of the Domain Name constitutes descriptive fair use because Plaintiffs are using "BestOffice" to accurately describe the excellent quality of their equipment and furniture products designed for use in an office setting, and related sales services for those products.

27. Plaintiffs had and continue to have the right to use the term "BestOffice" to describe their products as embodied in the Domain Name.

28. Before Defendant filed its Complaint to the Forum on November 3, 2021, Plaintiffs had no knowledge of Defendant or its alleged mark.

29. Before Defendant filed its Complaint to the Forum on November 3, 2021, Plaintiffs had no knowledge that Lowe's, Walmart, and Wayfair.com were Defendant's customers and never targeted them as such.

30. Contrary to the statement in the FORUM Decision, *Factory Direct Wholesale, LLC v. Decai Fu*, Claim Number FA2111001971788, page 4, Smugdesk, LLC's registered agent Decai Fu is a different person from Plaintiff Decai (Tony) Fu.  There are many people called Decai Fu in China, who may have different Chinese characters for the same name spelled in English.

31. Contrary to the statement in the FORUM Decision, *Factory Direct Wholesale, LLC v. Decai Fu*, Claim Number FA2111001971788, page 4, Plaintiffs never passed off their products as Defendant's products.

32. Instead, Plaintiffs use the Domain Name to promote their bona fide legitimate business, which is, and has been for at least nine years, selling their furniture products and services. Screenshots of Plaintiffs' website are displayed below:









33.     Plaintiffs have never offered to sell the Domain Name to Defendant or anyone else.

34.     Plaintiffs did not register the Domain Name using false WHOIS contact information.

35.     Plaintiffs have not registered multiple domain names using the term "BestOffice."

**Defendant and Its Trademark Registrations**

36.     Defendant operates its website at <fdwwwholesale.com> ("Defendant's Website"), which looks nothing like Plaintiffs' website at www.bestoffice.com.  A screenshot of Defendant's website is displayed below.



37.     On information and belief, despite claiming to use the BESTOFFICE mark since 2013, Defendant has no online location that incorporates the term "BestOffice" in the second-level domain name.

38.     Defendant currently does not appear to offer any goods or services on its <fdwwholesale.com> website, and its BESTOFFICE mark does not appear there. *See* screenshots below:







8









39.     Defendant is the record owner of Reg. No. 4603563 on the United States Patent and Trademark Office ("PTO") Supplemental Register for "BESTOFFICE" in connection with "Furniture for house, office and garden; Office chairs; Office desks; Office furniture; Office tables" in International Class 20, with a registration date of September 9, 2014 (the "'563 Registration").

9

Defendant's '563 Registration on the Supplemental Register constitutes an admission that the term BESTOFFICE is merely descriptive of Defendant's products, including office furniture.

40. On July 16, 2018, Defendant filed an application Serial No. 88038985 for "BESTOFFICE" for the same goods listed in the '563 Registration on the Principal Register.

41. During the prosecution of application Serial No. 88038985, on August 28, 2018, Defendant received a Section 2(e)(1) refusal, which found that Defendant's "BESTOFFICE" mark merely described a quality or characteristic of its goods and services, and also noted: "the applicant's registration, [the '563 Registration], for the same wording and goods is on the Supplemental [R]egister because of its descriptiveness" (Exhibit D), and indicated that Defendant could not claim acquired distinctiveness based on its prior registration on the Supplemental Register.

42. Defendant did not overcome the Examining Attorney's refusal until October 26, 2018 when Defendant submitted the following 2(f) claim: "The mark has become distinctive of the goods/services through the applicant's substantially exclusive and continuous use of the mark in commerce that the U.S. Congress may lawfully regulate for at least the five years immediately before the date of this statement." Exhibit E. Defendant's statement in the 2(f) claim that the mark "has become distinctive" constitutes admissions that the term "BESTOFFICE" describes a quality or characteristic of Defendant's products, including office furniture, that "BESTOFFICE" is not inherently distinctive, and that "BESTOFFICE" was not entitled to trademark protection prior to the application filing date of July 16, 2018.

43. On March 5, 2019, Defendant's application Serial No. 88038985 matured into Registration No. 5690345 with the above-referenced 2(f) claim (the "'345 Registration).

44. Given the descriptiveness of Defendant's alleged BESTOFFICE mark, it is not inherently distinctive, it is inherently weak, and the earliest it could have acquired distinctiveness is give years after its first use date of July 14, 2018 (if it has acquired distinctiveness at all).

**Descriptive and Dilutive Use of BEST OFFICE By Third Parties**

45.     In the Plaintiffs' and Defendant's industry, the term "BEST OFFICE" has been universally used by third parties to refer to desirable office furniture, equipment, or supplies: https://best-office.com/, https://bestoffice.pro/, https://www.bestofficefurniture.com/, https://www.bestofficefurnituredenver.com/, http://www.bestofficefurnituredesktopworkstation.xyz/, https://bestofficesetup.com/, https://www.bestofficeshop.com/, https://www.bestofficegroup.com/, http://www.bestofficesolutions.com/, https://www.bestofficepros.com/, https://bestofficesystems.com/, https://bestofficeproducts.net/, http://www.bestofficephone.net/, https://bestofficeprinters.com/, https://bestofficecleaning.com/, https://best-officechairs.com/, https://bestofficeschair.com/, https://bestofficechair.net/, https://bestofficechairschicago.com/, https://bestofficechairsreviews.org/, https://bestofficechairunder200.com/, https://bestofficechairs.net/, https://bestofficechair.org/,https://worldwidebestofficechairs.com/, https://bestofficestationeryitems.com/, https://www.best-office-interiors.com/, https://www.etsy.com/listing/575828344/best-office?gpla=1&gao=1&, http://www.bestofficefiles.com/,  https://bopstaples.com/, https://www.g2.com/categories/office-suites, https://www.bosmiami.com/,  http://www.4bossoffice.com/, https://www.officelovin.com/, https://bestocs.com/, https://www.buzzfile.com/business/US-Best-Office-Furniture-LLC-917-929-7810, https://www.move-tastic.com/blog/best-office-moving-company/, https://bestwayofficesupply.com/, https://www.merchantcircle.com/best-bet-office-machine-van-nuys-ca, https://www.amazon.com/s?i=merchant-items&me=A3G2RBEZBLAJ53, http://www.bestnewandused.com/, https://www.bestlex.com/, https://bestoffice.space/, http://thebestoffices.com/, https://www.buzzfile.com/business/Simply-The-Best-Office-Services-Worldwide,-Inc.-305-767-3967, https://www.ontimesupplies.com/, and https://floridadesks.com/.  The screenshots of these websites are attached as Exhibit F.

46.     Defendant's own customers, Wayfair.com and Lowes use the term "BEST OFFICE" in a non-trademark manner to describe furniture: https://www.wayfair.com/commercial-business-furniture/top-rated/best-office-partitions-with-reviews-c432417.html, https://officefurnitureusa.store, and https://www.lowes.com/n/buying-guide/office-furniture-buying-guide.  The screenshots of these websites are attached as Exhibit G.

47. Media, news outlets, and awards also use the term "BEST OFFICE" to describe desirable office furniture, equipment, or supply: https://www.forbes.com/sites/forbes-personal-shopper/2021/10/29/best-office-chairs/?sh=574eae6534e8, https://www.nytimes.com/wirecutter/reviews/best-office-chair/, https://www.mobileappdaily.com/best-office-apps-for-android, https://www.techradar.com/best/free-office-software, https://www.bondcollective.com/blog/office-lighting/, https://zapier.com/blog/microsoft-office-vs-g-suite/, https://qz.com/2084580/how-to-find-the-best-office-chair/, https://www.wired.com/gallery/best-office-chairs/, https://www.nydailynews.com/consumer-reviews/sns-bestreviews-office-best-high-end-furniture-20211206-db6ggkx5c5eptc2oqbmrluw2vq-story.html, https://www.chicagotribune.com/consumer-reviews/sns-bestreviews-office-best-high-end-furniture-20211206-db6ggkx5c5eptc2oqbmrluw2vq-story.html, https://www.cnet.com/tech/computing/home-office-essentials/, https://www.cnet.com/home/kitchen-and-household/best-office-chairs/, https://nymag.com/strategist/article/best-office-chairs-home-office-chairs.html, https://kevsbest.com/best-office-rental-space-in-las-vegas-nv/, https://www.greengeeks.com/blog/best-office-suites/, https://www.computerworld.com/article/3515808/g-suite-vs-office-365-whats-the-best-office-suite-for-business.html, https://www.youtube.com/watch?v=zpIPhAGHSV4, https://www.prevention.com/health/g38278670/best-chairs-for-lower-back-pain/, https://www.thesmbguide.com/office-supplies, https://ichitect.com/best-office-supply-websites/, https://www.yelp.com/search?find_desc=Office+Supplies&find_loc=Fairfax%2C+VA, https://www.yelp.com/search?find_desc=Office+Supplies&find_loc=Washington%2C+DC, https://www.yelp.com/nearme/office-equipment-repair, https://www.thebalancesmb.com/best-office-supplies-4155089, https://heavy.com/tech/2020/01/office-coffee-machines/,https://www.oldtownfurnitures.com/office-furniture-vacaville/, https://cefurn.com/2018/08/02/best-office-furniture-company/, and https://www.wired.com/story/best-cyber-monday-laptop-deals-2021/.  The screenshots of these websites are attached as Exhibit H.

48.     The PTO considers the terms "BEST" and "OFFICE" to merely describe office equipment, furniture, and supplies, including but not limited to BEST OFFICE SUPPLY being registered on the Supplemental Register for toners under Reg. No. 5,783,895 by ABC Office Tech, Inc.; BEST and design registered with a 2(f) claim for furniture under Reg. Nos. 4887538 and 6472732 by Best Chairs Incorporated; and "best" & design registered with a 2(f) claim as to "BEST" under Reg. No. 4,995,917 by SRM Holdings, LLC.  A simple search on the PTO records shows that the word "BEST" has been disclaimed in registrations covering furniture and "OFFICE" has been disclaimed in registrations covering furniture.  Exhibit I.

49.     Given the above-listed third-party descriptive uses of BEST OFFICE, Defendant has never had continuous and substantially exclusive use of BESTOFFICE and thus has not acquired distinctiveness in the minds of consumers sufficient to create trademark rights in BESTOFFICE.

50.     In 2018, Defendant represented to the USPTO that it had sold 31,000 units under the BESTOFFICE mark. Exhibit D, p. 15.

51.     This evidence submitted to the PTO is insufficient to establish that consumers view the descriptive wording BESTOFFICE as a source identifier for Defendant's products.

52.     On information and belief, Defendant has not engaged in sufficient use and promotion of products under the descriptive BESTOFFICE mark to establish that the mark serves as a source identifier for its products in the minds of consumers.

**The UDRP Proceeding**

53.     On November 3, 2021, Defendant filed a complaint with the FORUM in accordance with the Uniform Domain Name Dispute Resolution Policy (the "UDRP Complaint").

54.     Upon initiation of the UDRP proceeding the Domain Name registrar locked the Domain Name, pursuant to UDRP Rule 4(b).  Plaintiff Defu (Tony) Cai did not check his email for the notice of the UDRP Complaint until November 30, 2021 in the U.S., or December 1, 2021 in China.

55.     Thus, Defendant did not have actual knowledge of the UDRP Complaint until November 30, 2021 in the U.S., or December 1, 2021 in China.

56.     On November 30, 2021, the FORUM granted the relief requested by Defendant and ordered that <bestoffice.com> domain name be transferred from Plaintiffs to Defendant (the "UDRP Decision").

57.     On December 1, 2021, the domain name registrar, Google LLC emailed Plaintiffs that it "will implement the decision of your administrative proceeding [TRANSFERRED from Respondent to Complainant] regarding bestoffice.com on December 14, 2021."  Exhibit B.

**Defendant's Material Misrepresentations in the UDRP**

58.     Defendant's UDRP contained material misrepresentations that directly influenced the UDRP panelist's decision to award it transfer of the Domain Name.

59.     In its UDRP Complaint, Defendant alleged ownership of its '563 Registration on the Supplemental Register and the '345 Registration on the Principal Register, claiming that it had used the term "BESTOFFICE" since July 14, 2013.

60.     The Domain Name was registered on May 19, 2002.

61.     The term "registration" under the ACPA refer(s) only to the initial registration and not to any subsequent re-registrations.

62.     Defendant knew it did not have any trademark rights to the term "Best Office" prior to 2013.

63.     Defendant knew that its '563 Registration had only been registered on the Supplemental Register for being merely descriptive, which does not establish any trademark rights.

64.     Defendant knew that its '345 Registration was refused registration by the Examining Attorney under Section 2(e)(1) of the Lanham Act because the mark was descriptive, and thus not immediately entitled to trademark protection.  Defendant eventually overcame this refusal in October 2018 based on a claim of acquired distinctiveness which, on information and belief, is faulty and fails to establish that Defendant has trademark rights to BESTOFFICE.

65.     Because the Domain Name was initially registered more than ten years before Defendant first used its alleged BESTOFFICE mark, Plaintiffs' registration and continued ownership of the Domain Name does not violate Section 1125(d)(1).

66.     Because Defendant had no rights in the alleged BESTOFFICE mark when the Domain Name was initially registered in 2002, Defendant's UDRP complaint knowingly and materially misrepresented that Plaintff's Domain Name was identical and confusingly similar to Defendant's alleged mark.

67.     Because Defendant had no rights in the alleged BESTOFFICE mark when the Domain Name was initially registered in 2002, Defendant's UDRP complaint knowingly and materially misrepresented Plaintiffs' rights and legitimate interests in this descriptive term by stating: "Respondent has no rights or legitimate interests in the bestoffice.com domain name."

68.     Defendant intentionally concealed the inherently descriptive nature of the terms "BEST" and "OFFICE." As such, Defendant's UDRP complaint knowingly and materially misrepresented Plaintiffs' right to use these descriptive words to accurately describe its goods and services by stating: "Respondent has no rights or legitimate interests in the bestoffice.com domain name."

69.     As noted above, Defendant falsely claimed Plaintiffs had knowledge of Defendant's marks and products prior the UDRP Proceeding, as well as that it had passed itself off as Defendant.

70.     Defendant's material misrepresentations regarding the strength and scope of its alleged BESTOFFICE mark were an essential part of the UDRP panelist's findings that lead to its ordering the Domain Name to be transferred to Defendant. Among other things, the UDRP panelist began her bad-faith analysis by noting: "The Respondent did not acquire the Domain Name until 2019, seven years after the Complainant began use of its mark."

## FIRST CAUSE OF ACTION

### Declaratory Relief (28 U.S.C. § 2201): Non-Violation of the ACPA
### (Under 15 U.S.C. §§ 1114(2)(D)(v), 1125(d)(1))

71.     Plaintiffs repeat and reallege each and every allegation set forth above.

72.     Plaintiffs' registration and use of the Domain Name do not violate Defendant's rights in the alleged BESTOFFICE trademark under the ACPA. In registering the Domain Name, Plaintiffs did not have "bad faith intent" to profit from Defendant's alleged BESTOFFICE trademark, as provided in 15 U.S.C. § 1125(d)(1).

73.     At the time the Domain Name was initially registered in 2002, Defendant had not used or applied to register the alleged BESTOFFICE trademark.  Thus, Defendant did not have any trademark rights to the term BESTOFFICE at the time the Domain Name was initially registered.

74.     Accordingly, Defendant's alleged mark "BESTOFFICE" was neither "distinctive" nor "famous" under the ACPA at the time the Domain Name was initially registered in 2002.

75.     Defendant did not provide sufficient information or documentation to establish that the alleged BESTOFFICE mark is famous under the Federal Anti-Dilution Act in its UDRP Complaint.

76.     Upon information and belief, Defendant did not acquire secondary meaning in the term "BESTOFFICE" for office furniture products and related services when Plaintiffs acquired the Domain Name in October 2019.

77.     Upon information and belief, Defendant's alleged mark BESTOFFICE is not famous.

78.     Upon information and belief, Defendant did not acquire secondary meaning in the term "BESTOFFICE" for office furniture products and related services at the time the Domain Name was registered on May 19, 2002.

79.     In the UDRP Complaint, Defendant failed to show that its alleged mark "BESTOFFICE" was distinctive or acquired secondary meaning for office furniture products and related services at the time the Domain Name was registered on May 19, 2002.

80.     In the UDRP Complaint, Defendant did not establish that its alleged mark "BESTOFFICE" was distinctive or acquired secondary meaning for office furniture products and related services by October 2019 when Plaintiffs acquired the Domain Name.

81.     Plaintiffs reasonably believe their registration and use of the Domain Name was and is lawful under the ACPA.

82.     At the time Plaintiffs registered the Domain Name, Plaintiffs' used the Domain Name to directly describe their bona fide offering of goods and services, namely "office" products that are "best" available to consumers.

83.     Plaintiffs have provided Defendant with notice of this Action.

84.     An actual controversy exists with respect to whether Defendant is entitled to transfer of the Domain Name, based on Defendant's alleged rights under the Lanham Act.

85.     In the absence of a declaration from the Court, Google LLC will transfer the Domain Name to the control of the Defendant, and Plaintiffs will suffer immediate and irreparable harm.

### SECOND CAUSE OF ACTION

### Reverse Domain Name Hijacking Under 15 U.S.C. §§ 1114(2)(D)(IV)

86.     Plaintiffs repeat and reallege each and every allegation set forth above.

87.     Plaintiffs' Domain Name has been locked by the registrar Google LLC, impairing Plaintiffs' full enjoyment of the benefits of registration as a consequence of knowing and material misrepresentations made by Defendant during the UDRP proceeding.

88.     Plaintiffs' Domain Name has been ordered to be transferred from Plaintiffs' control as a direct consequence of knowing and material misrepresentations made by Defendant during a UDRP proceeding.

89.     In the absence of a declaration from the Court, Google LLC will transfer the Domain Name to the control of the Defendant, and Plaintiffs will suffer immediate and irreparable harm.

90.     The foregoing actions of Defendant have been knowing, deliberate, and willful.

91.     Plaintiffs have incurred costs in seeking to prevent transfer of the Domain Name as a consequence of Defendant's knowing and material misrepresentations in the UDRP proceeding.

92.     Plaintiffs' registration and/or use of the Domain Name does not violate any cognizable right of the Defendant under the ACPA.

93.     Plaintiffs are entitled to a judgment that Defendant's actions violate the ACPA.

94.     Defendant's conduct has harmed and will continue to harm Plaintiffs, thereby entitling Plaintiffs to recover actual and/or statutory damages.

### THIRD CAUSE OF ACTION

### Declaratory Relief for Non-Infringement of Trademarks Under 15 U.S.C. § 1115(b)(4)

95.     Plaintiffs repeat and incorporate the allegations set forth in the prior paragraphs.

96.     Given the genericness of the words "BEST" and "OFFICE," the combined term "BESTOFFICE" has been commonly used to refer to the quality, nature, and function of office

furniture products and their sales services.  Consumers will understand that the term "BESTOFFICE" refers to office furniture made with excellent quality.

97.     Plaintiffs use the term "BESTOFFICE" not as a trademark, but only to fairly and accurately inform the public of the quality, nature, and function of their office furniture products.

98.     If Plaintiffs are prohibited from using "BESTOFFICE" it will be denied access to a term that allows them to accurately and reasonably convey to their customers of their office furniture products and services that are of the best quality.

99.     Plaintiffs have never used the ™ symbol in connection with the term "BESTOFFICE" nor have Plaintiffs sought trademark registration for the term "BESTOFFICE" or any variation thereof.

100.    Plaintiffs' use of the term "BESTOFFICE" is in good faith.

101.    Plaintiffs' use of the term "BESTOFFICE" does not trade off Defendant's good will.

102.    Plaintiffs had no actual knowledge of Defendant or its products before receiving the Domain Name Decision.  Before the Domain Name Decision, Plaintiffs had no correspondence with Defendant, Defendant's customers, and Defendant's competitors.

103.    Based on the foregoing, Plaintiffs' use of the term "BESTOFFICE" is descriptive fair use.  Plaintiffs are entitled to a declaratory relief for non-infringement of Defendant's trademark rights under 15 U.S.C. § 1115(b)(4).

**FOURTH CAUSE OF ACTION**

**Declaratory Relief for Non-Infringement of Trademarks Under 28 U.S.C. §§ 1051, 2201**

104.    Plaintiffs repeat and incorporate the allegations set forth in the prior paragraphs.

105.    Defendant has alleged trademark infringement in the UDRP Complaint, claiming that Plaintiffs' use of the term "BestOffice" infringed Defendant's trademark rights.

106.    An actual, present, and justiciable controversy has arisen between Plaintiffs and Defendant concerning Plaintiffs' right to use the term "BestOffice" in connection with office furniture-related goods and services.

107.    Defendant has no right to the exclusive use of the descriptive term "BestOffice" in connection with office furniture products and services.

108.     There is an actual controversy with respect to whether Defendant has a valid protectable trademark to the term BestOffice.

109.     The term "BestOffice" will be understood by the consumers to refer to desirable products made for use in the office.

110.     Both Defendant's '563 Registration and '345 Registration for "BESTOFFICE" cover "Furniture for house, office and garden; Office chairs; Office desks; Office furniture; Office tables" ("Defendant's Products").   The generic class of Defendant's Products are office furniture.

111.     At all relevant times — before, at the time, and after Defendant filed its application Serial No. 88038985 on July 16, 2018, which matured into the '345 Registration for "BESTOFFICE" — the term "BESTOFFICE" has been used as a common adjective in a descriptive manner to refer to office furniture and equipment made with excellent quality.

112.     As a matter of law, Defendant has admitted that the term "BESTOFFICE" is merely descriptive of Defendant's Products when it agreed to amend its application to the Supplemental Register on July 1, 2014.  Exhibit J, Examiner's Amendment.

113.     As a matter of law, Defendant has again admitted that the term "BESTOFFICE" is inherently descriptive of Defendant's Products, when during the prosecution of its '345 Registration, when Defendant submitted the acquired distinctiveness claim under Section 2(f) of the Lanham Act. Exhibit E.

114.     The term "BESTOFFICE" is now, and for many years has been used as an adjective for desirable goods and services that function in an office building setting.

115.     The primary significance of the term "BESTOFFICE" to the relevant purchasers is to refer to the quality, function, and/or characteristics of goods and services used in an office.

116.     The term "BESTOFFICE" does not distinguish Defendant's office furniture from office furniture, equipment, or supplies of others that also use the term "BestOffice" or "BEST OFFICE."

117.     Plaintiffs' use of the term "BestOffice" and the Domain Name does not infringe any rights of Defendant under the Lanham Act.

118.    Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaratory relief that Plaintiffs' use of the term "BestOffice" does not constitute trademark infringement.

## FIFTH CAUSE OF ACTION

### Cancellation of Defendant's '345 Registration Under 15 U.S.C. §§ 1064 and 1119

119.    Plaintiffs repeat and incorporate the allegations set forth in the prior paragraphs.

120.    Defendant's '345 Registration is not incontestable.

121.    Upon information and belief, Defendant's alleged mark "BESTOFFICE" did not acquire secondary meaning for office furniture products identified in Defendant's '345 Registration. In fact, Defendant's alleged BESTOFFICE mark has never acquired secondary meaning.

122.    Specifically, the documents Defendant submitted in the UDRP proceeding— screenshots of its product listings and customer review posts on the Internet—did not show that Defendant's products were actually purchased by anyone and did not show that the people behind these customer reviews were actual purchasers.  Exhibit K, Exhibits 6, 7, and 8 of the UDRP Complaint.

123.    The sales information Defendant submitted in the UDRP Complaint, namely "Complainant's sales of Complainant's BESTOFFICE products of more than 300 million dollars since 2013" was not supported by any documentation.

124.    At its best, Defendant's sales information merely shows that the term "BESTOFFICE" is popular in Defendant's industry and does not demonstrate how the consumers perceived the term "BESTOFFICE."

125.    Defendant's use of the term "BESTOFFICE" has never been exclusive.

126.    For the five years' use to create secondary meaning, Defendant's use of the alleged "BESTOFFICE" mark must have been substantially exclusive and continuous.  However, given the widespread third parties' descriptive and dilutive use of the term "BEST OFFICE" in Defendant's industry (Exhibit F), Defendant's use of "BESTOFFICE" was not substantially exclusive from 2013 to 2018, and is still not substantially exclusive.

127.    However, on July 16, 2018, when Defendant filed an application Serial No. 88038985 for "BESTOFFICE" for office furniture-related goods, Defendant submitted the following 2(f) claim

with the PTO:  "The mark has become distinctive of the goods/services through the applicant's *substantially exclusive* and continuous use of the mark in commerce that the U.S. Congress may lawfully regulate for at least the five years immediately before the date of this statement" (emphasis added), which was not true.  Exhibit L.

128.    The PTO relied on such statement in issuing Defendant's Registration No. 5690345 on the Principal Register.

129.    Based on the foregoing, Defendant's Registration No. 5690345 should be cancelled pursuant to 15 U.S.C. §§ 1064 and 1119 on the basis that Defendant's alleged mark "BESTOFFICE" shown in this registration never acquired distinctiveness, including at the time when Defendant made the statement to the PTO that its alleged "BESTOFFICE" mark "has become distinctive of the goods/services through the applicant's substantially exclusive and continuous use of the mark in commerce that the U.S. Congress may lawfully regulate for at least the five years immediately before the date of this statement."

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A.    Enter judgment on Plaintiffs' behalf against Defendant on all counts, and order Google not transfer the Domain Name to Defendant;

B.    Enter an order finding an absence of bad faith, within the meaning of the ACPA, by Plaintiffs;

C.    Enter an order finding that Defendant made a knowing and material misrepresentation that the Domain Name is a bad-faith use of Defendant's alleged trademarks;

D.    Enter an order finding that Defendant made a knowing and material misrepresentation that the Domain Name is identical to, confusingly similar to, or dilutive of a mark in which Defendant has rights;

E.    Enter an order finding that Defendant engaged in reverse domain name hijacking in violation of the Anti-Cybersquatting Consumer Protection Act;

1    F.    Enter an order enjoining Defendant from any and all further efforts to force Plaintiffs

2 to transfer the Domain Name to Defendant;

3    G.    Enter an order cancelling Defendant's Registration No. 5690345;

4    H.    Award Plaintiffs' actual damages in an amount to be determined at trial;

5    I.    Award Plaintiff statutory damages in an amount the Court deems just and proper;

6    J.    Award attorneys' fees and costs to Plaintiffs; and

7    K.    Award such other and further relief as the Court deems just and proper.

8                                    **JURY DEMAND**

9

10    Plaintiffs demand a trial by jury for all claims for relief herein on all issues that are properly

triable to a jury.

11

12 Dated:  December 9, 2021                By:  */s/ Matthew Samet*

13                                        Matthew Samet
                                          FINNEGAN, HENDERSON, FARABOW,
14                                          GARRETT & DUNNER, LLP
                                          3300 Hillview Avenue
15                                        Palo Alto, California  94304
                                          Telephone:(650) 849-6600
16                                        Facsimile: (650) 849-6666

17                                        B. Brett Heavner
                                          Jonathan Uffelman
18                                        Yinfei Wu
                                          901 New York Avenue NW
19                                        Washington, DC  20001
                                          Telephone:(202) 408-4000

20                                        *Attorneys for Plaintiffs*
21                                        Shenzhen Big Mouth Technologies Co., Ltd.
                                          Decai (Tony) Fu

22

23

24

25

26

27

28

                                            22