UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHENZHEN BIG MOUTH TECHNOLOGIES CO., LTD., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FACTORY DIRECT WHOLESALE, LLC,<br><br>Defendant. | Case No. 21-cv-09545-RS<br><br>**ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE AFFIRMATIVE DEFENSES** |

**I. INTRODUCTION**

Plaintiffs Decai (Tony) Fu and Shenzhen Big Mouth Technologies Co., Ltd. ("Big Mouth") filed this lawsuit against Defendant Factory Direct Wholesale, LLC ("FDW"). Plaintiffs aver their use of the domain name <bestoffice.com> ("the domain name") was not unlawful, and seek to prevent the transfer of the domain name from Fu to FDW. FDW moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Big Mouth from Count Two, which avers that FDW engaged in reverse domain name hijacking in violation of 15 U.S.C. § 1114(2)(D)(iv). FDW argues that Big Mouth is not a real party in interest to that claim. For the reasons described below, the motion to dismiss Big Mouth from Count Two is granted, as section 1114(2)(D)(iv) only allows the domain name registrant to sue, and Fu is the registrant. Further, Plaintiffs bring a motion to strike nineteen of the twenty affirmative defenses in FDW's answer. The motion to strike is granted as to the Eighth Affirmative Defense, and denied as to the other affirmative defenses.

## II. FACTUAL BACKGROUND

**A. Factual Background**[1]

Big Mouth is an office lighting and furniture business founded and operated by Fu. Plaintiffs aver they have been using the term "BESTOFFICE" while selling products since 2012. The domain name was originally registered in 2002 by a prior owner, and Fu acquired the domain name on October 3, 2019 to expand his company's business to online sales. Defendant FDW is also an office furniture company and claims it has used the mark "BESTOFFICE" since 2013. FDW became the record owner of the trademark term "BESTOFFICE," for use in connection with certain types of furniture, on the United States Patent and Trademark Office ("USPTO") Supplemental Register on September 9, 2014. On July 16, 2018, FDW filed an application for trademark registration for "BESTOFFICE" on the USPTO Principal Register. The USPTO examining attorney initially refused the application on the grounds that FDW's "BESTOFFICE" mark was merely descriptive and indicated that FDW could not claim acquired distinctiveness based on its prior registration on the Supplemental Register, but FDW ultimately overcame the refusal by establishing acquired distinctiveness through evidence of five years prior use.[2]

On November 3, 2021, FDW filed a domain dispute action against Fu under the Uniform Domain Name Dispute Resolution Policy ("UDRP") with Forum, an arbitration forum for domain name disputes. The UDRP provides for an expedited arbitration process to resolve domain name ownership disputes involving trademarks. *See Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 548 n.1 (9th Cir. 2013); *Rules For Uniform Domain Name Dispute Resolution*

---

[1] As this Court must "accept all factual allegations in the complaint as true" when evaluating a Rule 12(b)(6) motion to dismiss, *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005), all facts in this section are taken from the Complaint, unless noted otherwise.

[2] A term that is not inherently distinctive may have acquired distinctiveness if it has a "secondary meaning which occurs when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" *See Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 211 (2000) (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 n.11 (1982)). An applicant may establish acquired distinctiveness through proof of "substantially exclusive and continuous" use of a mark in commerce for five years. 15 U.S.C. §1052(f).

*Policy*, Internet Corporation for Assigned Names and Numbers, https://www.icann.org/resources/pages/udrp-rules-2015-03-11-en (last visited Mar. 27, 2022). In its complaint filed with Forum, FDW sought to recover the domain name, asserting Fu's domain name infringed its rights in its "BESTOFFICE" trademark by using the domain name to pass itself off as FDW and market and promote products that directly compete with FDW's "BESTOFFICE" brand products. Fu, the respondent in the UDRP proceeding, did not reply to the Written Notice of the Complaint sent to him on November 4, 2021.[3] *See* Declaration of Elizabeth Borland in Support of Motion to Dismiss, Ex. 1, at pg. 2. On November 30, 2021, Forum entered a decision ordering the domain name to be transferred from Fu to FDW. *Id*. The following day, Google, the domain name registrar, informed Fu via email that it would implement Forum's decision to transfer the domain name to Defendant FDW.

In response, Plaintiffs filed this action on December 9, 2021, seeking to prevent or reverse transfer of the domain name, as well as declaratory relief, under the Anticybersquatting Consumer Protection Act ("ACPA"). The Complaint includes five claims for relief: (1) declaratory relief pursuant to 28 U.S.C. § 2201 establishing Plaintiffs' non-violation of the ACPA, 15 U.S.C. §§ 1114(2)(D)(v), 1125(d)(1); (2) reverse domain name hijacking by Defendant in violation of 15 U.S.C. § 1114(2)(D)(iv); (3) declaratory relief establishing Plaintiffs' non-infringement of trademarks through descriptive fair use of term "BESTOFFICE" under 15 U.S.C. § 1115(b)(4); (4) declaratory relief for Plaintiffs' non-infringement of trademarks based on ground that Defendant lacks valid protectable trademark to term "BESTOFFICE" under 28 U.S.C. §§ 1051, 2201; and (5) cancellation of Defendant's principal registration under 15 U.S.C. §§ 1064 and 1119.

Defendant filed a motion to dismiss one plaintiff, Big Mouth, from the reverse domain

---

[3] The Court takes judicial notice of the Forum decision, Declaration of Elizabeth Borland in Support of Motion to Dismiss, Ex. 1. Plaintiffs do not dispute the authenticity of the Forum decision, and rely on the decision in their Complaint. *See* Fed. R. Evid. 201(b)(2) (permitting a court to take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

name hijacking claim, Count Two. Defendant also filed an answer to the Complaint, asserting various affirmative defenses and raising four counterclaims. Plaintiffs then filed a motion to strike nineteen of Defendant's twenty affirmative defenses.

### III. DEFENDANT'S MOTION TO DISMISS BIG MOUTH FROM COUNT TWO

**A. Legal Standard**

    **a. Federal Rule of Civil Procedure 12(b)(6)**

Rule 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 570 (2007)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Dismissal under Rule 12(b)(6) may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (internal quotation marks and citation omitted). When evaluating such a motion, courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

    **b. Cybersquatting and Reverse Domain Name Hijacking**

In 1999, Congress amended the Lanham Act by enacting the ACPA. *See Thomas v. Rosetta Stone*, No. 2:19-CV-02197-RGK-JEM, 2019 WL 8195427, at *1 (C.D. Cal. Oct. 21, 2019). The Lanham Act regulates and protects the use of trademarks in interstate and foreign commerce. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 193 (1985). The ACPA protects the public from acts of Internet "cybersquatting," a term used to describe the bad-faith registration of Internet domain names. *See Thomas*, 2019 WL 8195427, at *1. A trademark owner is expected to have the right to use a domain name involving the owner's trademark and may

pursue action against a domain name registrant who cybersquats, or hijacks, the domain name from the trademark owner. *See* 15 U.S.C. § 1125(d)(1)(A); *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 625 n.1 (4th Cir. 2003). Although a trademark owner can enforce their rights against cybersquatters via UDRP arbitration, if a party loses, they may bring a lawsuit in federal district court to challenge the UDRP determination. *See* 15 U.S.C. §§ 1114(2)(D)(iv)-(v).

"[W]hen a trademark owner overreaches in exercising his rights under the ACPA" or is awarded rights by a UDRP decision through knowing and material misrepresentation, he may be held liable for "reverse hijacking" the domain name from the domain name registrant via section 1114(2)(D)(iv) or section 1114(2)(D)(v). *Barcelona.com*, 330 F.3d at 625 n.1; 15 U.S.C. § 1114(2)(D)(iv). Reverse domain name hijacking under section 1114(2)(D)(iv) requires showing that the defendant (1) made a "knowing and material misrepresentation . . . that [a] domain name is identical to, confusingly similar to, or dilutive of a mark" and (2) this misrepresentation caused a registration authority to transfer, disable, or cancel the domain name. 15 U.S.C. § 1114(2)(D)(iv); *Thomas*, 2019 WL 8195427, at *2. A plaintiff may seek damages, costs, and attorney's fees, as well as declaratory and injunctive relief, such as transfer of the domain name. 15 U.S.C. § 1114(2)(D)(iv). The following provision, section 1114(2)(D)(v), creates an additional claim for relief for obtaining an injunction in instances of reverse domain name hijacking, and does not require proving knowing and material misrepresentation.

**B. Discussion**

The motion to dismiss Big Mouth from Count Two presents a single legal question: whether section 1114(2)(D)(iv) allows a person or entity other than the domain name registrant to sue. As a threshold matter, this motion is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant states its motion is brought pursuant to Rule 12(b)(6) and Rule 17(a)(1), which requires that "[a]n action must be prosecuted in the name of the real party in interest." Defendant largely provides arguments about standing, and references in a footnote Federal Rule of Civil Procedure 12(b)(1), which concerns motions to dismiss for lack of subject

1  matter jurisdiction. This motion addresses who is allowed to bring a claim under section
2  1114(2)(D)(iv), which concerns the statute's restrictions on who may sue, not Article III standing.
3  Whether framed in terms of statutory standing or whether an entity is a real party in interest under
4  the statute, the question here is not jurisdictional. *See Jewel v. Nat'l Sec. Agency*, 673 F.3d 902,
5  907 n.4 (9th Cir. 2011) ("Statutory 'standing, unlike constitutional standing, is not
6  jurisdictional.'" (quoting *Noel v. Hall,* 568 F.3d 743, 748 (9th Cir. 2009)). The question of who
7  may sue under section 1114(2)(D)(iv) involves the elements of the claim for relief, making this a
8  question of "whether a plaintiff states a claim for relief[,]" which "relates to the merits of a case,
9  not to the dispute's justiciability[.]" *Id.*

10  The parties here have opposing views on how to interpret section 1114(2)(D)(iv) and
11  whether Congress intended for this provision to allow non-registrants to sue. The first step when
12  interpreting a statute is to identify "the plain meaning of the language in question." *United States*
13  *v. 144,774 pounds of Blue King Crab*, 410 F.3d 1131, 1134 (9th Cir. 2005). The plain meaning of
14  a statutory provision is controlling when it is unambiguous. *Children's Hosp. & Health Ctr. v.*
15  *Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999) (citing *United States v. Ron Enters., Inc.*, 489 U.S.
16  235, 241 (1989)). However, if there is ambiguity, legislative history may be used as an aid to
17  interpretation. *Id*. (citing *Green v. Commissioner*, 707 F.2d 404, 405 (9th Cir. 1983)).

18  Looking to the text of section 1114(2)(D)(iv), this specific provision of the statute does not
19  explicitly state who may sue under the provision. In contrast, the following subsection, which also
20  concerns reverse domain name hijacking, specifies who can sue, stating "a domain name registrant
21  . . . may . . . file a civil action[.]" 15 U.S.C. § 1114(2)(D)(v). Plaintiffs argue that the absence of
22  specific language about who may sue in subsection (iv), when such language is present in
23  subsection (v), means Congress did not intend to limit who may sue under subsection (iv) to
24  domain name registrants. Despite the absence of explicit language about who may sue under
25  section 1114(2)(D)(iv), the statute is clear about who has a remedy. The provision states that the
26  domain name registrant may be granted injunctive relief and that a defendant may be liable for
27  damages incurred by the domain name registrant, and does not mention relief to any other person

or entity:

> (iv) If a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's fees**, incurred by the domain name registrant** as a result of such action. The court may also grant injunctive relief to the **domain name registrant**, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant.

15 U.S.C. § 1114(2)(D)(iv) (emphasis added). Here, Congress has explicitly designated who can receive the remedies allowed under the statute. Therefore, it reasonably follows that the person who can sue is the person who incurred the harm and has a right to the remedy, making this statute unambiguous as to who may sue.

In addition, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989); *see also Children's Hosp. & Health Ctr.*, 188 F.3d at 1096 ("To determine the plain meaning of a statutory provision, we examine not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy."). Sections 1114(2)(D)(iv) and (v) are part of the same clear statutory scheme: to provide a form of relief to domain name registrants who risk losing their registrations by reverse hijackers. Both explicitly mention domain name registrants on multiple occasions. Neither provision singles out any other person or entity as having statutory standing or a remedy. Although Congress did not say explicitly who may sue under section 1114(2)(D)(iv), the consistent singling out of domain name registrants in both subsections supports the finding that Congress intended for the domain name registrant to be the real party in interest in both subsections.

Even if the plain meaning of the provision were ambiguous, the legislative history leads us to the same conclusion. The legislative history of the statute plays a key role in understanding its context. *See Children's Hosp. & Health Ctr.*, 188 F.3d at 1096 (stating that when ambiguity as to the plain meaning of a statute exists, courts "may use legislative history as an aid to interpretation"). As specified in Senate Report 106-140, which discusses amendments made to the

bill enacting the ACPA and section 1114(2)(D)(iv):

> The amended bill goes further, however, in order to protect the rights of **domain name registrants** against overreaching trademark owners. Under the amended bill, a trademark owner who knowingly and materially misrepresents to the domain name registrar or registry that a domain name is infringing is liable to the **domain name registrant** for damages, including costs and attorneys' fees, resulting from the suspension, cancellation, or transfer of the domain name. In addition, the court may award injunctive relief to the **domain name registrant** by ordering the reactivation of the domain name or the transfer of the domain name back to the **domain name registrant.**

S. Rep. No. 106-140, at 11 (1999) (emphasis added). Because the Senate Report addressing the amended bill only refers to the rights of domain name registrants, the two subsections of the statute should be read in light of the clear purpose for implementing the ACPA and the reverse hijacking provisions: to protect domain name registrants against "overreaching trademark owners." *Id.*; *see also* 15 U.S.C. § 1114(2)(D)(iv)-(v). Based on the repeated reference to domain name registrants in the provision, the identification of domain name registrants as the only person or entity who may be awarded relief, the context within the statute as a whole, and the legislative history, section 1114(2)(D)(iv) only allows the domain name registrant to sue.

Both Plaintiffs and Defendant cite to *Smith v. Director's Choice LLP*, No. 15-00081 (JBS/AMD), 2017 WL 7720482 (D.N.J. Nov. 30, 2017), in support of their arguments, but *Smith* provides little helpful guidance. In *Smith*, the domain name registrant at the time of the UDRP proceeding was a company, and the registration was transferred to the company's owner before the owner sued under the ACPA. *Id.* at *5. The *Smith* court found the owner had statutory standing under sections 1114(2)(D)(iv) and (v), because even though he was not the registrant at the time of the proceeding, he was the registrant at the time of the lawsuit and personally suffered the loss of the domain name. *Id*. In contrast, Big Mouth has never been the domain name registrant; Fu has been the registrant from the time of the UDRP proceeding and duration of this lawsuit. Thus, *Smith* involved a different factual scenario and is inapposite to this case.[4]

---

[4] In addition, Plaintiff's theory that a company and company's owner may be found to be in

Further, the general statutory standing framework for the Lanham Act, as articulated in 15 U.S.C. § 1125(a), does not apply here, because the question is whether section 1114(2)(D)(iv) limits who may sue to domain name registrants, not whether a separate provision of the Lanham Act would allow additional plaintiffs.[5] Indeed, the clear limiting language in section 1114(2)(D)(v), which Plaintiffs do not contest, indicates that certain provisions of the Lanham Act are more restrictive concerning who may sue than the general statutory standing framework in section 1125(a). Similarly, Plaintiffs' argument that Big Mouth is a licensee of Fu and thus can sue under section 1114(2)(D)(iv) is unavailing, because that argument is rooted in caselaw analyzing statutory standing under section § 1125(a).

In short, 15 U.S.C. § 1114(2)(D)(iv) allows only a domain name registrant to sue, and thus Plaintiff Big Mouth cannot state a claim upon which relief may be granted under that subsection as it is not the domain name registrant. Dismissal with prejudice is appropriate when it is clear that "the complaint could not be saved by any amendment." *Gomper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (internal quotation marks and citation omitted). Amendment here would be futile because Big Mouth cannot change the fact it is not the domain name registrant, and thus Big Mouth is dismissed from Count Two with prejudice. The dismissal from Count Two only applies to Big Mouth as to that claim and does not affect Fu's inclusion on that count or Big Mouth's inclusion on any other count, as Defendant has not sought to dismiss either plaintiff from any other count.

---

privity of each other sufficient to establish statutory standing under section 1114(2)(D)(iv) is not convincing. Although the *Smith* court found that the owner and the company were in "privity" and used that as a basis to conclude that the owner could sue under section 1114(2)(D)(iv), *see* 2015 WL 7720482, at *5, *Smith* provided no citation or support for its conclusion that subsection (iv) allows anyone in privity to sue, nor do Plaintiffs provide such authority. Rather, Plaintiffs point to authority to demonstrate how Fu and Big Mouth are in privity without providing any case or statute that indicates that such a relationship is relevant for section 1114(2)(D)(iv).

[5] Section 1125(a) broadly authorizes suit by "any person who believes that he or she is likely to be damaged[.]"

### IV. PLAINTIFFS' MOTION TO STRIKE AFFIRMATIVE DEFENSES

Plaintiffs argue that Defendant's affirmative defenses should be stricken for a variety of reasons: some are insufficient under the ACPA as a matter of law; some are not proper affirmative defenses because they allege defects in Plaintiffs' prima facie case; some are merely restatements of denials of allegations found earlier in the complaint; one is a counterclaim rather than an affirmative defense; and another is both redundant of a counterclaim and insufficiently pled such that it does not put Plaintiffs on fair notice of the defense.

#### A. Legal Standard

A party may move to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A defense may be insufficient as a matter of pleading or a matter of law." *G & G Closed Cir. Events, LLC v. Nguyen*, No. 5:10-CV-05718-EJD, 2011 WL 6293922, at *1 (N.D. Cal. Dec. 15, 2011). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *see also F.T.C. v. Swish Mktg.*, No. C 09-03814 RS, 2010 WL 653486, at *6 (N.D. Cal. Feb. 22, 2010) ("Properly executed, a motion to strike streamlines a judge's inquiry by focusing his or her attention only on the real issues in the case." (internal quotation marks and citation omitted)). Whether to grant a motion to strike "lies within the sound discretion of the district court." *Holmes v. Elec. Document Processing, Inc.*, 966 F.Supp.2d 925, 230 (N.D. Cal. 2013) (internal quotation marks and citation omitted).

#### B. Discussion

"The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *See Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979). Of the nineteen contested affirmative defenses, the only defense that Plaintiffs argue has failed to provide fair notice of the defense at issue is the Eighth Affirmative Defense, which states "Plaintiffs' claims are barred in whole or in part because Plaintiffs' use and registration of the <bestoffice.com> domain is unlawful." Answer and Counterclaims, pg. 10. Courts in this

district have "held that the heightened pleading standard for complaints articulated in *Twombly* and extended to all civil complaints in *Iqbal* applies to affirmative defenses." *Snap! Mobile, Inc. v. Croghan*, No. 18-CV-04686-LHK, 2019 WL 884177, at *2 (N.D. Cal. Feb. 22, 2019) (citing *Perez v. Gordon & Wong L. Grp.*, No. 11–CV–03323–LHK2012 WL 1029425, at *8 (N.D. Cal. Mar. 26, 2012)). Merely stating that Plaintiffs' activity is unlawful is insufficient to state a claim under the *Twombly* and *Iqbal* standard. Thus, this affirmative defense is stricken. For all other affirmative defenses, though, striking the defense would not streamline the litigation, and the motion to strike is therefore denied. Defendants are given leave to amend the Eighth Affirmative Defense, as leave to amend should be freely given if doing so does not cause prejudice to the opposing party. *See Wyshak*, 607 F.2d at 826.

## V. CONCLUSION

For all the foregoing reasons, Plaintiff Big Mouth is dismissed from Count Two with prejudice. The motion to strike is granted as to the Eighth Affirmative Defense with leave to amend. The motion to strike is denied as to all other affirmative defenses.

**IT IS SO ORDERED**.

Dated: April 5, 2022

_____
RICHARD SEEBORG
Chief United States District Judge